UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-21514-Civ-SCOLA
(16-20060-Cr-SCOLA)
MAGISTRATE JUDGE P. A. WHITE

RAMON REASCOS-REINA,

    Movant,

v.                                      REPORT OF
                                        MAGISTRATE JUDGE

UNITED STATES OF AMERICA,

    Respondent.
    _____/

## I. Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, challenging the constitutionality of his convictions and sentences for conspiracy to operate and embark on a semi-submersible vessel without nationality, with the intent to evade detection and operating and embarking on a semi-submersible vessel without nationality, with the intent to evade detection, entered following a guilty plea in case no. **16-20060-Cr-Scola.**

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and the Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts.

The Court has reviewed the movant's initial motion (Cv-DE#1), with supporting memorandum (Cv-DE#1-1), together with the Presentence Investigation Report ("PSI"), and the court's Statement of Reasons ("SOR"), and all pertinent portions of the underlying criminal file.

Construing the movant's §2255 motion liberally as afforded *pro se* litigants pursuant to Haines v. Kerner, 404 U.S. 519 (1972), movant raises as a sole ground for relief that he is entitled to a downward departure in sentence based on his status as a deportable alien.[1] (Cv-DE#1:5; Cv-DE#1-1).

## II. Procedural History

### A. Facts of the Offense[2]

The facts, as set forth in the PSI, reveal as follows. On January 7, 2016, while on routine patrol, a marine patrol aircraft ("MPA") sighted a self-propelled semi-submersible ("SPSS") traveling north in international waters, approximately 310 nautical miles south of the Mexico/Guatemala border. (PSI ¶3). The SPSS had no flag, navigational lights, signals, or registration, and was painted to camouflage with the ocean. (Id.). Law enforcement

---

[1] To the extent he alternatively seeks consideration of this filing as a civil rights suit, pursuant to 42 U.S.C. §1983 and/or Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), the court cannot do so. If movant intends to raise a claim for civil rights violation, he should do so by filing a separate civil complaint, on the proper form, in the federal district court having jurisdiction over the facility whereat the movant is currently confined, i.e., North Carolina.

[2] The facts of this case have been obtained from the PSI, since the docket reveals that the movant and his coconspirators pleaded guilty without the benefit of a written plea agreement or stipulated factual proffer. Although the change of plea and sentencing have not been transcribed, the government is being ordered to file these transcripts prior to expiration of the 14-day objection period so that the record is complete. However, for purposes of this Report, the transcripts are not required. Movant does not challenge the voluntariness of his plea, but rather the constitutionality of his sentence. To the extent he attempts to challenge his plea in objections, he should be precluded from doing so. It is well settled that arguments not raised by movant before a magistrate judge cannot be raised for the first time in objections to a Report. See Starks v. United States, 2010 WL 4192875 at *3 (S.D. Fla. 2010); United States v. Cadieux, 324 F.Supp. 2d 168 (D.Me. 2004). "Parties must take before the magistrate, 'not only their best shot but all of the shots.'" Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987)(quoting Singh v. Superintending Sch. Comm., 593 F.Supp. 1315, 1318 (D.Me. 1984)).

suspected that the SPSS was involved in illicit narcotics trafficking because such vessels are frequently used for this purpose. (Id.).

Due to mechanical issues, the MPA was forced to return to base, but another MPA was launched and was able to re-acquire the SPSS, approximately 283 nautical miles southwest of the Mexico/Guatemala border. (PSI ¶4). Once in range of the SPSS, the United States Coast Guard Cutter ("USCG") *Northland*, launched their over-the-horizon ("OTH") smaller boat, along with a helicopter. (Id.). When the OTH and helicopter arrived on the scene, the SPSS crew came topside. (Id.). At that time, the OTH crew observed one of the crew members aboard the SPSS jettisoning objects overboard, and as the OTH crew neared the SPSS, it became clear the vessel was rapidly sinking and the crew members scrambling to leave before it sank. (Id.). Movant, and three other SPSS crew members, later identified as Colombian nationals, were detained and then transferred to the *Northland*. (Id.). One crew member stated that the SPSS was registered in Colombia, but after contacting the Colombian government, that government could neither confirm nor deny the SPSS' claim of nationality. (Id.).

Because the SPSS was mostly underwater, with only the bow remaining above the water line, USCG crew members determined the SPSS was unsafe to board and received permission to use gunfire to try to release the SPSS' contents. (Id.). After employing gunfire, the SPSS sank completely. (Id.). Some debris, however, emerged from the sunken vessel, but no bales were recovered. (Id.). However, two GPS devices were retrieved from the SPSS. (Id.).

Meanwhile, on January 18, 2016, the movant and his crew were transferred to United States law enforcement officers, who then

3

escorted them to Miami-Dade County, Florida, where they first entered the United States. (Id.:¶5). Thereafter, they were released to U.S. Marshal custody and transported to the Federal Detention Center in Miami. (Id.). No post-arrest statements were provided by the movant nor any of his coconspirators. (Id.).

**B. Indictment, Pre-trial Proceedings, Conviction, Sentencing, and Direct Appeal**

Following his arrest, movant was charged with and pleaded guilty, without the benefit of a written plea agreement or stipulated factual proffer, to conspiracy to operate and embark on a semi-submersible vessel without nationality, with the intent to evade detection (Count 1), and operating and embarking on a semi-submersible vessel without nationality, with the intent to evade detection (Count 2). (Cr-DE#s21,36,88).

Prior to sentencing, a PSI was prepared, which reveals as follows. The movant's base offense level was set at a level 26, pursuant to U.S.S.G. §2X7.2(a) because the offense of conviction was for violation of 18 U.S.C. §2285. (PSI ¶11). Two levels to the base offense level were then deducted for acceptance of responsibility, resulting in a total adjusted offense level 24. (PSI ¶¶18-19). The probation officer next determined that the movant had zero criminal history points, resulting in a criminal history category I. (PSI ¶22). Based on a total offense level 24 and a criminal history category I, the guideline imprisonment range was 51 months at the low end, and 63 months at the high end. (PSI ¶45). Statutorily, movant faced a maximum of 15 years imprisonment as to each offense, pursuant to 18 U.S.C. §3585(a). (PSI ¶44).

The government filed objections to the PSI, seeking an 8-level enhancement because the movant and his coconspirators sank the

4

vessel; and, an additionally objecting to the acceptance of responsibility reduction, claiming movant and his coconspirators continuously and falsely denied sinking the vessel, which was part of the relevant conduct in the case. (Cr-DE#48). Movant filed objections, seeking corrections to personal and physical data provided by the movant during the presentence interview on July 1, 2016. (Addendum to PSI). The probation officer noted the corrections, so that the matter was resolved prior to sentence. (Id.).

Movant appeared for sentencing on September 30, 2016. (Cr-DE#s82,88). At that time, the court apparently overruled the government's objections, adopting the PSI without change, but imposed a sentence otherwise outside the guideline range, based in pertinent part, on the reasons provided in the *Guideline Manual*. (SOR:I; IV.D, VI.A.). Thus, the court sentenced the movant to two concurrent terms of 46 months imprisonment, to be followed by 36 months supervised release. (Cr-DE#88). As reasons for the downward variance, it appears the court also considered the statutory factors, pursuant to 18 U.S.C. §3553(a), and determined that the variance was warranted given the movant's role and the seriousness of the offense, together with the need to promote respect for the law, to provide just punishment for the offense, afford adequate deterrence, and avoid unwarranted sentencing disparities among defendants. (SOR:VI.C.).

Thereafter, the judgment was entered by the Clerk on October 3, 2016. (Cr-DE#88). No direct appeal was filed. Thus, for purposes of the one year federal limitations period, the conviction became **final** on **Monday, October 17, 2016,** fourteen days after the entry of

judgment, when time expired for filing a notice of appeal.[3]

Although the motion is undated, and not signed under penalty of perjury, it was filed stamped received by the Clerk of Court on **April 24, 2017**. (Cv-DE#1:1). Absent evidence to the contrary, it is presumed the motion was filed on that date.

### III. Standard of Review

Pursuant to 28 U.S.C. §2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255. In determining whether to vacate a movant's sentence, a district court must first determine whether a movant's claim is cognizable under Section 2255. See Lynn v. United States, 365 F.3d 1225, 1232-33 (11th Cir. 2004)(stating that a determination of whether a claimed error is cognizable in a Section 2255 proceeding is a "threshold inquiry"), cert. den'd, 543 U.S. 891, 125 S. Ct. 167, 160 L. Ed. 2d 154 (2004). It is well-established that a Section 2255 motion may not be a substitute for a direct appeal. Id. at 1232 (citing United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)).

---

[3]Where, as here, a defendant does not pursue a direct appeal, his conviction becomes final when the time for filing a direct appeal expires. Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). On December 1, 2009, the time for filing a direct appeal was increased from 10 to 14 days days after the judgment or order being appealed is entered. Fed.R.App.P. 4(b)(1)(A)(i). The judgment is "entered" when it is entered on the docket by the Clerk of Court. Fed.R.App.P. 4(b)(6). Moreover, now every day, including intermediate Saturdays, Sundays, and legal holidays are included in the computation. See Fed.R.App.P. 26(a)(1).

The Eleventh Circuit promulgated a two-part inquiry that a district court must consider before determining whether a movant's claim is cognizable. First, a district court must find that "a defendant assert[ed] all available claims on direct appeal." <u>Id.</u> (<u>citing</u> <u>McCoy v. United States</u>, 266 F.3d 1245, 1258 (11th Cir. 2001); <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994). Second, a district court must consider whether the type of relief the movant seeks is appropriate under Section 2255. This is because "[r]elief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." <u>Lynn</u>, 365 F.3d at 1232-33 (<u>quoting</u> <u>Richards v. United States</u>, 837 F.2d 965, 966 (11th Cir. 1988)(internal quotations omitted)).

If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. §2255. To obtain this relief on collateral review, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." <u>Frady</u>, 456 U.S. at 166, 102 S.Ct. at 1584 (rejecting the plain error standard as not sufficiently deferential to a final judgment).

Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary

7

hearing." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). See also Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)(explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous"). As indicated by the discussion below, the motion and the files and records of the case conclusively show that movant is entitled to no relief, therefore, no evidentiary hearing is warranted.

In addition, the party challenging the sentence has the burden of showing that it is unreasonable in light of the record and the §3553(a) factors. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). The Eleventh Circuit recognizes "that there is a range of reasonable sentences from which the district court may choose," and ordinarily expect a sentence within the defendant's advisory guideline range to be reasonable. Id.

Movant has not challenged the voluntariness of the plea, nor has he challenged counsel's effectiveness at sentencing or during the plea proceeding. Nevertheless, to the extent he attempts to suggest that counsel was deficient and that he was prejudiced therefrom because the claim raised herein was not pursued at sentencing, the movant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203-04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." Id. at 203.

Furthermore, a §2255 movant must provide factual support for

his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406-07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr's, 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 Fed.Appx. 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991), cert. den'd Tejada v. Singletary, 502 U.S. 1105 (1992); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990)(citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)); United States v. Ross, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail ... are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

9

**IV. Threshold Issue-Timeliness and Procedural Bar**

**A. Timeliness**

As narrated previously, the movant's conviction became final at the latest on **October 17, 2016,** when time expired for filing a notice of appeal, fourteen days after entry of the judgment. For purposes of the AEDPA's one-year federal limitations period, the movant was required to file this motion to vacate within one year from the time the judgment became final, or no later than **October 17, 2017.** See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); see also, See Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008)(citing Ferreira v. Sec'y, Dep't of Corr's, 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)(this Court has suggested that the limitations period should be calculated according to the "anniversary method," under which the limitations period expires on the anniversary of the date it began to run); accord United States v. Hurst, 322 F.3d 1256, 1260-61 (10th Cir. 2003); United States v. Marcello, 212 F.3d 1005, 1008-09 (7th Cir. 2000)). Movant's motion was filed, at the latest, on **April 24, 2017**, less than a year after his conviction became final. Therefore, this proceeding is not time-barred.

**B. Procedural Bar**

It is worth mentioning at the outset that the movant's claim is procedurally defaulted because it could have been, but was not raised on direct appeal. A claim is procedurally barred if a movant fails to raise it on appeal. There are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not

raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from failure to appeal. Belford v. United States, 975 F.2d 310 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994).

Thus, in order to avoid procedurally defaulting a claim, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a §2255 proceeding." McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011)(internal quotation marks omitted), cert. den'd, __ U.S. __, 133 S.Ct. 112, 184 L.Ed.2d 52 (2012). A procedural default may be excused, however, if the defendant can demonstrate that one of two exceptions applies: (1) cause and prejudice, or (2) actual innocence. Bousley v. United States, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998); McKay, 657 F.3d at 1196 (internal quotation marks and alterations omitted); Engle v. Isaac, 456 U.S. 107 (1982).

To demonstrate cause, a §2255 movant "must show that some objective factor external to the defense prevented [the movant] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [the movant's] own conduct." Lynn v. United States, 365 F.3d 1225, 1235 (11th Cir. 2004); United States v. Breckenridge, 93 F.3d 132 (4th Cir. 1996). Ineffective assistance of counsel may serve as the cause required to excuse a movant's procedural default. United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000). "In order to do so, however, the claim of ineffective assistance must have merit." Id.; United States v. Breckenridge, 93 F.3d 132 (4 Cir. 1996).

11

Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Murray v. Carrier, 477 U.S. 478, 488 (1986). Movant suggests, in passing, that neither the government nor his counsel mentioned that he could request a departure based on his status as a deportable alien. (DE#4:10). Regardless, as will be demonstrated below, the claims warrant no relief. Consequently, no deficient performance or prejudice under Strickland has been established arising from counsel's failure to pursue these nonmeritorious claims. See Frederick v. Dep't of Corr's, 438 Fed.Appx. 801, 803 (11 Cir. Aug. 17, 2011)(*per curiam*)(finding counsel cannot be deficient for failing to raise nonmeritorious arguments).

## V. Discussion

The movant raises as a sole ground for relief that he is entitled to a downward departure in sentence based on his status as a deportable alien. (Cv-DE#1; Cv-DE#1-1). He relies on United States v. Smith, 27 F.3d 649 (D.C. Cir. 1994). Smith involves the failure to consider a downward departure **at the time of sentencing**, and as such, it is therefore inapplicable here, where movant is suggesting he is entitled to modification of his sentence. Furthermore, Smith is not binding on this court or the Eleventh Circuit.

In fact, cases from this Circuit have held that the collateral consequences that a defendant faces, because he is a deportable alien, generally do not support a downward departure. See United States v. Lahoud, 178 Fed.Appx. 926, 92 (11th Cir. 2006); United States v. Maung, 320 F.3d 1305, 1308 (11 Cir. 2003) (holding that

12

a downward departure sentence could not properly be based on desire to shield defendant from immigration consequences of conviction, noting: "[n]o decision to which we have been directed, or that we have found, has upheld a downward departure based upon collateral consequences related directly or indirectly to the defendant's status as an alien"); Estupinan v. United States, Nos. 8:05-cr-240-T-24MSS, 8:06-cv-1866-T-24MSS, 2007 WL 778961, at *10 (M.D.Fla., March 9, 2007) (citing United States v. Restrepo, 999 F.2d 640, 644-47 (2 Cir. 1993) (case in which district court, in order to support a downward departure, had relied on collateral consequences stemming from defendant's status as an alien which included ineligibility for assignment to lower-security facilities, post imprisonment detention pending removal, and removal itself, and the Second Circuit found that those collateral consequences were insufficient to support a downward departure and reversed the downward departure on direct appeal). Thus, movant has not demonstrated deficient performance or prejudice under Strickland arising from counsel's failure to bring this matter to the court's attention at sentencing.

To the extent the movant is suggesting that the "fast track" program, developed in the 1990's by certain U.S. attorney's Offices, should be extended to him, that argument also warrants no relief.

The "fast-track" program offer certain sentencing reductions in illegal reentry cases. This is not such a case. In the 1990's, certain United States Attorney's Offices developed early disposition or "fast-track" programs as a matter of prosecutorial discretion to deal with the increasingly large number of criminal immigration cases arising along the southwestern border of the United States. See United States v. Campos-Diaz, 472 F.3d 1278,

1279 n.1 (11th Cir. 2006), cert.den'd, 549 U.S. 1361 (2007). The Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act"), Pub. L. No. 108-066, 117 Stat. 650, Apr. 30, 2003, harmonized the programs with the departure provisions of the federal Sentencing Guidelines. Id.

More specifically, the PROTECT Act directed the Sentencing Commission to promulgate a statement by October 27, 2003, authorizing downward sentence departures as part of an early disposition program authorized by the Attorney General and the United States Attorney. See Pub.L.No. 108-21, §401(m)(2)(B), 117 Stat. 650, 675 (2003). The program allows for a four-point downward departure on motion of the government pursuant to U.S.S.G. §5K3.1.2. Id. See also United States v. Arevalo-Juarez, 464 F.3d 1246, 1248 (11th Cir. 2006); United States v. Martinez-Flores, 428 F.3d 22,2 5 (1st Cir. 2006). The PROTECT Act, however, did not make fast-track programs mandatory for all districts. See United States v. Castro, 455 F.3d 1249, 1252 (11th Cir. 2006).

Movant is not eligible for the fast-track program, because it does not apply to offenses like movant's. See United States v. Pitter, 555 Fed.Appx. 910, 913 (11th Cir. 2014)(unpublished)(finding no error were court determined that Fast Track Program applies only to illegal re-entry cases). Regardless, even if applicable to the movant, no showing has been made here that the court would have further departed below the guideline based on movant's status as a deportable alien. As will be recalled, the court already considered the advisory guidelines and statutory factors, imposing a sentence outside the advisory guideline range, to-wit, five months below the 51-month low end advisory guideline range. Thus, even had the issue been pursued, no showing has been made that the movant would have been entitled to participation in the Fast Track Program, much less

14

that the court would have granted the request. Consequently, counsel was not deficient and movant suffered no prejudice arising from his attorney's failure to pursue this nonmeritorious claim at sentencing.

Further, even if, as suggested, there are sentencing disparities between foreign nationals and U.S. citizens, the Eleventh Circuit has repeatedly held that the absence of a fast-track program does not create an unlawful sentencing disparity, as defined in 18 U.S.C. §3553(a)(6). See United States v. Gomez, 358 Fed.Appx. 53, 54 (11th Cir. 2009) (citing, United States v. Castro, 455 F.3d at 1252-53); United States v. Arevalo-Juarez, 464 F.3d 1246, 1250–51 (11th Cir. 2006). The Eleventh Circuit has also held that "the absence of a fast-track in a judicial district where a defendant is sentenced does not violate equal protection." United States v. Campos-Diaz, 472 F.3d 1278, 1279-80 (11th Cir. 2006).

In fact, the court has repeatedly made clear that it is "impermissible for the district court to consider disparities associated with early disposition programs in imposing ... sentence[.]" Id. at 1251. See also United States v. Romo–Villalobos, 674 F.3d 1246, 1251 (11th Cir. 2012)("[A]ny disparities created by fast-track programs do not fall within the scope of the 18 U.S.C. §3553(a) factors a district court considers in sentencing."); United States v. Brown 433 Fed.Appx. 708, 710 (11th Cir. 2011)(rejecting claim that because the Southern District of Florida does not have a fast-track program, defendant's higher sentence created an unwarranted sentencing disparity between him and similarly situated defendants in fast-track jurisdictions, which renders his sentence substantively unreasonable); United States v. Bravo, 271 F. Appx. 877, 879 and n.1 (11th Cir. 2008). The Eleventh Circuit has rejected in Vega–Castillo the argument

15

that the Supreme Court's decision in Kimbrough[4] effectively overruled this precedent. See United States v. Vega-Castillo, 540 F.3d 1235, 1238-39 (11th Cir. 2008).[5] See also United States v. Gomez-Carrillo, 379 Fed.Appx. 902, 904 (11th Cir. 2010)(same)(unpublished).

If, in the alternative, movant suggests his counsel should have argued for a lower sentence because Movant is not a U.S. citizen and therefore ineligible for certain programs offered by the Federal Bureau of Prisons that claim also warrants no relief. "[A] sentencing court may not apply a downward departure to shield aliens from detrimental collateral consequences stemming from [their] status as an alien." United States v. Saac, 632 F.3d 1203, 1215 (11th Cir. 2011) (citing United States v. Maung, 320 F.3d 1305, 1308-10 (11th Cir.2003)). Therefore, movant's argument are devoid of merit, and counsel could not have been deficient for failing to make it. See Frederick, 438 Fed. Appx. at 803.

In conclusion, the record reveals that movant is not entitled to relief on any of the arguments presented as it is apparent from the extensive review of the record above that the arguments raised herein are devoid of merit.

## VI. **Evidentiary Hearing**

---

[4] Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007)(holding that a district court possesses the discretionary authority to vary from the crack cocaine guidelines based upon a policy disagreement with the disparity between the sentences imposed for crack and powder cocaine offenses).

[5] See also United States v. Vega-Castillo, 548 F.3d 980, 981-82 (11th Cir. 2008)(Carnes, J., concurring)("If we are going to take a case en banc to reconsider our ... precedents in light of the Kimbrough [v. United States, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007)] decision, it needs to be one where ... there is no apparent reason why the defendant would not have been offered the benefits of an early disposition program if he had been in a district with that kind of program.").

To the extent movant requests an evidentiary hearing on his claims, it should be denied. The movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. See Townsend v. Sain, 372 U.S. 293, 307 (1963). A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As discussed in this Report, the arguments raised are unsupported by the record or without merit. No evidentiary hearing is required.

## VII. Certificate of Appealability

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts. A §2255 movant "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. §2253(c)." See Fed.R.App.P. 22(b)(1). Regardless, a timely notice of appeal must still be filed, even if the court issues a certificate of appealability. See 28 U.S.C. §2255 Rule 11(b).

However, "[A] certificate of appealability may issue ... only

17

if the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. §2253(c)(2). To make a substantial showing of the denial of a constitutional right, a §2255 movant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336-37 (2003) (citations and quotation marks omitted); see also Slack v. McDaniel, 529 U.S. 473, 484 (2000); Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001). After review of the record in this case, the Court finds the movant has not demonstrated that he has been denied a constitutional right or that the issue is reasonably debatable. See Slack, 529 U.S. at 485; Edwards v. United States, 114 F.3d 1083, 1084 (11th Cir. 1997). Consequently, issuance of a certificate of appealability is not warranted and should be denied in this case. Notwithstanding, if movant does not agree, he may bring this argument to the attention of the district judge in objections.

## VIII. Conclusion

It is therefore recommended that this motion to vacate be DENIED; that any pending motions not otherwise ruled upon be DISMISSED AS MOOT, that a certificate of appealability be DENIED; and, the case CLOSED.

Objections to this report may be filed with the Chief Judge within fourteen days of receipt of a copy of the report.

Signed this 26th day of April, 2017.

                                                      UNITED STATES MAGISTRATE JUDGE

cc:  Ramon Reascos-Renia, <u>Pro Se</u>
     Reg. No. 08979-104
     Rivers Correctional Institution
     Inmate Mail/Parcels
     Post Office Box 630
     Winton, NC 27986

     Noticing 2255 US Attorney
     Email: <u>usafls-2255@usdoj.gov</u>